IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIONEL FRANKS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY, et al., | : | No. 11-879 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                             April 25, 2011

Plaintiff Lionel Franks went to a sporting goods store to buy sneakers on April 9, 2010. Less than five minutes after leaving the store, Temple University police officers arrested him in connection with a recent shooting. Franks seeks damages under 42 U.S.C. § 1983 from Defendants including Temple University ("Temple"), which he claims is vicariously liable for its employees' violations of his Fourth and Fourteenth Amendment rights. Temple's motion to dismiss and Franks's response are presently before the Court. The Court will grant this motion for the following reasons.

**I.    BACKGROUND**

On April 9, 2010, eighteen-year-old high school student Lionel Franks went to buy a pair of sneakers at an Olympia Sports store on Germantown Avenue in Philadelphia. (Compl. ¶¶ 9, 14-15.) Franks wore a green sweat suit. (*Id*. ¶ 14.) He entered the store at about 4:20 p.m. and left with his new sneakers around 4:26 p.m. (*Id*. ¶ 15.) Video surveillance and a time-stamped receipt recorded the times he went into the store, made his purchase, and left. (*Id*. ¶¶ 15, 55-56.)

At approximately 4:20 p.m., a man wearing a green sweat suit shot another person on North

Seventeenth Street. (*Id*. ¶ 16.) Witnesses saw the man in the green sweat suit shoot the victim multiple times before escaping down Victoria Street. (*Id*. ¶¶ 17, 20-22, 24.) A local resident, Valerie Logan, also saw the shooter run down Victoria Street to Smedley and Venango Streets, where he got into the passenger sear of a black car. (*Id*. ¶ 24.)

Philadelphia Police Department ("PPD") officers arrived at the scene of the shooting. (*Id*. ¶ 25.) Logan ran to the police and told them what the shooter was wearing. (*Id*. ¶ 26.) The police then broadcast a "flash information" bulletin on police radio, informing law enforcement officers in the area that a male in a green sweat suit had been involved in a shooting near the intersection of Seventeenth and Erie. (*Id*. ¶¶ 27-28.)

Temple University Police Officer Matthew Hassel received the flash bulletin. He saw Franks, who was wearing a green sweat suit and walking down Venango Street on his way back from the sporting goods store. (*See id*. ¶ 29.) Hassel followed Franks and reported Franks's location. (*Id*. ¶ 30.) Two other Temple officers, Craney and McGuire, stopped Franks as Hassel caught up and joined them. (*Id*. ¶¶ 31-32.) The Temple officers asked Franks where he had come from. (*Id*. ¶ 33.) Franks explained that he had just left the Olympia Sports store on Germantown Avenue. (*Id*.) Franks carried a cell phone and a bag with his new sneakers. (*Id*. ¶ 34.) Hassel patted him down, but "did not recover anything." (*Id*. ¶ 35.)

Hassel and another Temple officer, Alston, arrested Franks and took him to a PPD station. (*Id*. ¶ 39.) The PPD discovered that no witness had seen the shooter's face. (*Id*. ¶ 44.) During an interview with PPD officers, Franks explained that he had just exited Olympia Sports and was walking to the bus when the Temple police officers arrested him. (*Id*. ¶¶ 46-49.)

In their reports, Officer Hassel and PPD detectives assigned to the case claimed that Logan

2

had positively identified Franks as the shooter. (*Id*. ¶¶ 37, 51.) The PPD detectives also claimed that they spotted "red marks that appear to be blood" on Franks's sneakers. (*Id*. ¶ 52.) The PPD obtained an arrest warrant and placed Franks in custody on charges of attempted murder, aggravated assault, and various firearms offenses. (*Id*. ¶ 54.)

The PPD detectives obtained surveillance video from Olympia Sports five days after the shooting, on April 14, 2010. (*Id*. ¶ 55.) The video showed Franks entering the store at 4:20:51 p.m. (*Id*. ¶ 56.) Franks alleges this is the same time the shooting was in progress. (*Id*.)

Franks appeared for a preliminary hearing in Philadelphia Municipal Court on May 25, 2010. (*Id*.) Three witnesses, including Logan, testified at the hearing that they had not seen the shooter's face. (*Id*. ¶ 58.) The prosecution stipulated that Logan would not make a facial identification of Franks at trial. (*Id*. ¶ 59.) However, based in part on the prosecution's representation that Franks's sneakers had tested positive for human blood, the court held Franks for trial. (*Id*. ¶¶ 61-63.)

The Philadelphia Court of Common Pleas ordered a DNA test of Franks's sneakers on August 6, 2010. (*Id*. ¶ 67.) The prosecution subsequently dropped all charges against Franks on August 31, 2010, when "the DNA match came back negative." (*Id*. ¶ 68.) Franks missed his senior prom and high school graduation and was unable to begin college in the fall of 2010 due to his arrest and imprisonment. (*Id*. ¶ 69.)

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate dismissal of complaints which fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing

them in the light most favorable to the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint and attached exhibits may be considered by the Court in ruling on a motion to dismiss. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

The Third Circuit applies a two-part analysis to determine whether claims should survive a Rule 12(b)(6) motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court must first separate the factual and legal elements of each claim, accepting well-pleaded facts as true but disregarding legal conclusions. *See id*. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *See id*. at 211 (citing *Phillips*, 515 F.3d at 234-35). If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the Court should dismiss the complaint for failure to state a claim. *See Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

**III.    DISCUSSION**

Franks seeks damages under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights. (Compl. ¶ 1.) To obtain relief in a § 1983 action, a plaintiff must show that a defendant, acting under color of state law, deprived him of a right secured by the Constitution and laws of the United States. *See, e.g., Harvey v. Plaints Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Section 1983 is not a vehicle for vicarious liability claims against local government entities; in these cases, liability under § 1983 "can be imposed only when the alleged injury is inflicted as part of a government policy or custom." *Wnek*

4

*v. City of Phila.*, Civ. A. No. 05-3065, 2007 WL 1410361, at *2 (E.D. Pa. May 10, 2007) (citation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).

Temple argues that Franks has failed to state a § 1983 claim because he offers no evidence that the Temple police violated his rights due to a policy or custom. Franks responds that *Monell* does not bar his vicarious liability claim against Temple because the university is not a "municipality" within the meaning of 5 Pa. Cons. Stat. § 732. (Pl.'s Opp'n 3.) Franks is incorrect.

Temple is a municipal subdivision for the purposes of § 1983. *Manning v. Temple Univ.*, Civ. A. No. 2004 WL 3019230, at *7 (E.D. Pa. Dec. 30, 2004) (citing *Molthan v. Temple Univ.*, 778 F.2d 955, 961 (3d Cir. 1985)); *Bloch v. Temple Univ.*, Civ. A. No. 94-2378, 1995 WL 263541, at *1 n.2 (E.D. Pa. May 1, 1995); *see also Marcavage v. Bd. of Trs. of Temple Univ. of the Commw. Sys. of Higher Educ.*, Civ. A. No. 00-5362, 2004 WL 1151835, at *10 (E.D. Pa. May 21, 2004) (applying *Monell* analysis to claims against Temple). Just as a city or city agency cannot be held vicariously liable under § 1983, Temple cannot be held liable on Franks's respondeat superior claim based on the conduct of Temple's employees. *See Shay v. County of Berks*, Civ. A. No. 0-7931, 2003 WL 21973318, at *4 n.7 (E.D. Pa. June 12, 2003) (noting that employers deemed state actors under § 1983 cannot be held vicariously liable for constitutional violations committed by their employees); *see also Gaines v. Univ. of Pa. Police Dep't*, Civ. A. No. 97-3381, 1997 WL 624281, at *4 (E.D. Pa. Oct. 7, 1997).

Franks's claim against Temple does not satisfy *Monell*'s requirements. Franks alleges only that the Temple police officers who arrested him "were acting in the course and scope of their employment with defendant Temple University, under the control of defendant Temple University and in furtherance of the interest of Temple University," and that "Defendant Temple University is

5

vicariously liable to the plaintiff for the conduct of defendants [Officers] Hassel and Alston." (Compl. ¶¶ 85-86.) Nowhere does he claim that the officers acted at the direction of a Temple official or in keeping with a Temple policy or custom. (*See id*. ¶¶ 74-77.) Rather, Franks claims the officers intentionally provided false information to the PPD and failed to investigate Franks's alibi. (*Id*.) These allegations cannot support a *Monell* claim against Temple.

## IV. CONCLUSION

Franks pleads no facts sufficient to support a plausible § 1983 claim against Temple. The Court will therefore grant Temple's motion to dismiss. An Order consistent with this Memorandum will be docketed separately.